UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) MILTON MAXWELL WEST and | ) | |
| | ) | |
| (2) LISA WEST, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:   19-CV-004-KEW |
| | ) | |
| (3) BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHEROKEE, STATE OF OKLAHOMA | ) ) ) ) ) | |
| (4) NORMAN FISHER, in his Official Capacity as Cherokee County Sheriff, | ) ) ) | |
| (5) DERRICK GRANT, individually and as employee and representative of Cherokee County, | ) ) ) ) | |
| (6) ANTHONY BOWLING, individually and as employee and representative of Cherokee County, | ) ) ) ) | |
| (7) AUSTIN CLUCK, individually and as employee and representative of Cherokee County, | ) ) ) ) | |
| (8) KERRY NOVAK, individually and as employee and representative of Cherokee County, | ) ) ) ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiffs, Milton Maxwell West and Lisa West, for their Complaint against the above-named Defendants, allege and state as follows:

1. Milton Maxwell West ("Mr. West") is a United States Armed Service veteran living in Cherokee County, Oklahoma, at all times relevant to this case.

2. Mr. West is a vigilant defender of both his family and the rights bestowed upon citizens of the United States. Mr. West exercises his Constitutional and God-given right to defend himself and his family by possessing a number of firearms for personal protection. Additionally, Mr. West and his wife, Plaintiff Lisa West ("Mrs. West"), own a number of collectable firearms, as well as firearms that are family heirlooms.

3. Mr. and Mrs. West's rural property has been subject to invasion by armed individuals believed to be involved in the drug trade. Mr. West has been confronted in the past by an individual trespassing on his rural property brandishing a firearm and threatening violence upon Mr. West.

4. In the exercise of protecting his family from the violence and invasions of said intruders, Mr. West regularly carries a firearm.

5. This action is brought pursuant to 42 U.S.C. § 1983, and the Second, Fourth and Fourteenth Amendments to the United States Constitution, as well as the laws of the State of Oklahoma, for the egregious actions of the Cherokee County Sheriff's Office and the other Defendants, as more particularly described below.

6. This Court has federal question jurisdiction of this action pursuant to 28 U.S.C. § 1331.

7. The acts and/or omissions giving rise to Plaintiffs' claims arose in Cherokee County, State of Oklahoma, which is within the Eastern District of Oklahoma. Venue is therefore appropriate pursuant to 28 U.S.C. § 1391.

8. Plaintiffs also assert causes of action arising under Oklahoma law, including but not limited to violations of the Constitution of the State of Oklahoma. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

9. Mr. West is and has been at all material times a citizen of the State of Oklahoma. At the time of the events related herein, Mr. West resided in Cherokee County, Oklahoma.

10. Mrs. West is and has been at all material times a citizen of the State of Oklahoma. At the times of the events related herein, Mrs. West resided in Cherokee County, Oklahoma.

11. Defendant Cherokee County Board of Commissioners, is a political subdivision of the State of Oklahoma located in northeast Oklahoma.

12. Defendant Sheriff Norman Fisher ("Sheriff Fisher"), has been at all times relevant to this case a citizen of the State of Oklahoma.

13. At the times relevant herein, Sheriff Fisher was employed as the Sheriff of Cherokee County, Oklahoma.

14. There is no other person who has authority over the Sheriff of Cherokee County, acting in his capacity as Sheriff.

15. Because of Sheriff Fisher's position as Sheriff of Cherokee County, the acts, customs, policies, practices, failure to train, and failure to supervise his employees alleged herein are attributable to the Cherokee County Board of Commissioners as well as to the Sheriff in his official capacity.

16. During the time Fisher was the Sheriff of Cherokee County, Oklahoma, he was a policy-maker with final authority for Cherokee County, Oklahoma.

17. At all times relevant herein, Sheriff Fisher was acting under color of state law and within the course and scope of his employment as Sheriff of Cherokee County, Oklahoma.

18. Defendant Sergeant Derrick Grant ("Sergeant Grant"), was, at all times relevant herein, employed by Cherokee County as a Sergeant for the Cherokee County Sheriff's Office.

19. Unless otherwise pled in the alternative, at all relevant times herein Sergeant Grant was acting under the color of law and under the direction and control of the County and the Sheriff, and pursuant to the official policy, practice, pattern, and/or custom of the County and the Sheriff of improperly hiring, training, supervising and disciplining deputy sheriffs – demonstrating the County's and the Sheriff's deliberate indifference to Mr. and Mrs. West's safety and well-being.

20. Defendant Deputy Anthony Bowling ("Deputy Bowling"), was, at all times relevant herein, employed by Cherokee County as a Deputy for the Cherokee County Sheriff's Office.

21. Unless otherwise pled in the alternative, at all relevant times herein Deputy Bowling was acting under the color of law and under the direction and control of the County and the Sheriff, and pursuant to the official policy, practice, pattern or custom of the County and the Sheriff of improperly hiring, training, supervising and disciplining deputy sheriffs – demonstrating the County's and the Sheriff's deliberate indifference to Mr. and Mrs. West's safety and well-being.

22. Defendant, Deputy Austin Cluck ("Deputy Cluck"), was, at the times relevant herein, employed by Cherokee County as a Deputy for the Cherokee County Sheriff's Office.

23. Unless otherwise pled in the alternative, at all relevant times herein Deputy Cluck was acting under the color of law and under the direction and control of the County and the Sheriff, and pursuant to the official policy, practice, pattern, and/or custom of the County and the Sheriff of improperly hiring, training, supervising and disciplining deputy sheriffs – demonstrating the County's and the Sheriff's deliberate indifference to Mr. and Mrs. West's safety and well-being.

24. Defendant Deputy Kerry Novak ("Deputy Novak"), was, at the times relevant herein, was employed by Cherokee County as a Deputy for the Cherokee County Sheriff's Office.

25. Unless otherwise pled in the alternative, at all relevant times herein Deputy Novak was acting under the color of law and under the direction and control of the County and the Sheriff, and pursuant to the official policy, practice, pattern, and/or custom of the County and the Sheriff of improperly hiring, training, supervising and disciplining deputy sheriffs – demonstrating the County's and the Sheriff's deliberate indifference to Mr. and Mrs. West's safety and well-being.

26. Unless otherwise pled in the alternative, all of the conduct of the Defendants alleged herein was within the exercise of state authority within the meaning of 42 U.S.C. § 1983.

27. On February 6, 2017, Mr. West was confronted by an armed intruder on his land in rural Cherokee County (14200 West Clyde Maher Road, Tahlequah, Oklahoma). Two Cherokee County Sheriff Deputies were dispatched to Mr. West's residence in response to the threat. The deputies made no attempt to locate the armed assailant, and left the property without making any investigation or arrest.

28. On April 7, 2017, Mr. West was again confronted by an armed intruder on his land while he was in his outdoor hydro-therapy pool. The assailant – who was hiding in the hilly, wooded area behind the Wests' home – began firing a gun at Mr. West. Mr. West sought cover/protection on his patio area while he attempted to defend himself by returning fire.

29. Mrs. West, who was inside the home but who had heard the exchange of gunfire, called 911.

30. The Cherokee County Sheriff's Office responded to Mrs. West's call for help. Upon arrival at the active shooting scene, the police took cover, just as Mr. West was doing.

31. Sergeant Grant, first over the PA system and then via connection to Mr. West's cell phone, ordered Mr. West to drop his weapon, abandon his cover, and move toward the responding deputies and Sergeant.

32. After receiving inadequate reassurance that the Cherokee County Sheriff's Office would provide the necessary protection from the assailant as he abandoned his cover, Mr. West moved toward the deputies and Sergeant. In doing so, Mr. West was directly exposed to the assailant's direct line of fire. (Bullet holes were later discovered in the very area Mr. West sought cover.)

33. Inexplicably, Mr. West was then taken into custody and accused of firing at the Sheriff's deputies and Sergeant. The arresting deputies did not investigate or concern themselves with the person who had been shooting at Mr. West from the wooded hillside. They were instead focused only on detaining Mr. West, although at no time did they read Mr. West his Miranda rights.

34. Instead of taking this opportunity to prevent the armed assailant from escaping the area, and in a gross affront to the Second, Fourth, and Fourteenth Amendments to the United States Constitution, as well as protections afforded under the laws of the State of Oklahoma, the Cherokee County Sheriff's Office then entered the home of Mr. and Mrs. West, without a warrant and without consent, and seized – as purported "evidence" – all of the family's firearms and all of the receipts and records pertaining to the firearms. The seized "evidence" consisted of approximately two dozen pistols, rifles, antique firearms, family heirlooms, ammunition, cleaning kits, tools, kits, cases, and accessories. The Cherokee County Sheriff's Office refused to even provide Mr. and Mrs. West with a return or inventory list of the property they had illegally taken from the Wests' home.

35. None of the seized items had anything to do with the incident for which the deputies were dispatched to the Wests' residence. In essence, the Cherokee County Sheriff's Office illegally converted Mr. West's lifelong collection of firearms and accessories, and left him defenseless against the armed intruder(s) on his property who, not surprisingly, returned on April 23, 2017, and shot him. Thankfully, the bullet wound was not fatal.

36.     Upon information and belief, and to be further developed during discovery, Plaintiffs allege that the Cherokee County Sheriff's Office had a policy and/or custom of inadequate training and/or supervision over employees, with deliberate indifference to the injuries that could result.

37.     Upon information and belief, and to be developed during discovery, Plaintiffs allege that Sheriff Fisher promoted, implemented, created or is responsible for the continued operation of the polices that caused constitutional harm to the Plaintiffs and did so in a manner that is objectively unreasonable.

38.      Because their firearms were illegally taken from their home by the Cherokee County Sheriff's Department, Plaintiffs were prevented from protecting themselves and their property, and thus had to abandon their residence, being forced instead to live with family members.

39.     Despite being taken into custody, despite the unlawful intrusion into his home by the deputies, and despite the unlawful taking of his property, Mr. West was not immediately charged with any crime related to the events of April 7, 2017.  When Mr. West later called the Cherokee County Sheriff's office to inquire about his firearms and related items and how to get the items back, Mr. West was issued a threat.  More specifically, he was told that if he persisted in attempting to get his property back, he would be charged with assault and battery upon a police officer (a felony offense which carries with it the possibility of life in prison).

40.     Mr. West did not back down.  As any citizen whose property had been illegally taken would do, Mr. West continued in his efforts to get his property back.  The Cherokee County Sheriff's office then followed through on its illegal threat by charging Mr. West, in January of 2018 – nine months after the event – with multiple counts of assault and battery upon a police officer.

41. As a result of the bogus charges leveled against Mr. West, he was forced to hire legal counsel. <u>When Mr. West's counsel proved to the Cherokee County District Attorney the true events of April 7, 2017, the district attorney dismissed the criminal case in its entirety</u>.

42. Mr. West ultimately had to obtain a court order in August of 2018 directing the Sheriff of Cherokee County to return his firearms and related items to him.

43. Defendants did not at any time have a search warrant to enter the home of Mr. and Mrs. West. Indeed, Defendants never even attempted to obtain a warrant.

44. Mr. West was taken into custody outside his home.

45. Having placed Mr. West into custody, Defendants had sufficient time – if they had so chosen – to seek a search warrant alleging that probable cause existed for the search of the home of Mr. and Mrs. West.

46. At no time did Mr. West consent to the search of the home.

47. At no time did Mrs. West consent to the search of the home.

48. At no time did Mrs. West, who was inside the home, pose a threat to herself or others.

49. The acts and omission of the Defendants were done pursuant to the custom, policy, and/or practice of the Cherokee County Sheriff's Office as promulgated by official policy-makers and carried out by Defendants.

50. The acts and omissions of the Defendants were done pursuant to the promulgation, creation, implementation, and/or continued responsibility of Sheriff Fisher, and caused the depravation of Plaintiffs' constitutional rights. The implementation of this policy was objectively unreasonable.

51. Sheriff Fisher has final authority over the deputies and Sergeant in this case, and Sheriff Fisher's decisions are not subject to higher level authority.

52. Acting under color of state law, Sergeant Grant deprived Plaintiffs of their clearly established constitutional right under the Fourth Amendment of the Constitution to be free from unreasonable searches and seizure, and did so with deliberate indifference to the Plaintiffs' safety and well-being.

53. Acting under color of state law, Deputy Bowling deprived Plaintiffs of their clearly established constitutional right under the Fourth Amendment of the Constitution to be free from unreasonable searches and seizure.

54. Acting under color of state law, Deputy Cluck deprived Plaintiffs of their clearly established constitutional right under the Fourth Amendment of the Constitution to be free from unreasonable searches and seizure.

55. Acting under color of state law, Deputy Novak deprived Plaintiffs of their clearly established constitutional right under the Fourth Amendment of the Constitution to be secure in their person and to be free from unreasonable searches and seizure.

56. Plaintiffs possess an individual right to possess and carry weapons in case of confrontation under the Second Amendment to the United States Constitution.

57. Defendants' actions in seizing the firearms of the Plaintiffs without just cause or due process of law were done pursuant to the custom, policy, and/or practice of the Cherokee County Sheriff's Office as promulgated by official policy-makers and carried out by Defendants.

58. The acts and omissions of the Defendants were done pursuant to the promulgation, creation, implementation, and/or continued responsibility of Sheriff Fisher. This policy caused the depravation of Plaintiffs' constitutional rights.

59. Sheriff Fisher has final authority over the Sergeant and deputies in this case, and Sheriff Fisher's decisions are not subject to higher level authority.

60. Acting under color of state law, Sergeant Grant deprived Plaintiffs of their clearly-established constitutional rights under the Second Amendment to own and possess a firearm.

61. Acting under color of state law, Deputy Bowling deprived Plaintiffs of their clearly-established constitutional rights under the Second Amendment to own and possess a firearm.

62. Acting under color of state law, Deputy Cluck deprived Plaintiffs of their clearly-established constitutional rights under the Second Amendment to own and possess a firearm.

63. Acting under color of state law, Deputy Novack deprived Plaintiffs of their clearly-established constitutional rights under the Second Amendment to own and possess a firearm.

64. The actions of Sergeant Grant and Deputies Bowling, Cluck, and Novack violated Plaintiffs' clearly-established Second Amendment rights.

65. Plaintiffs have a property interest in the firearms and related items removed from their home.

66. The Cherokee County Sheriff's Office seized the firearms of Plaintiffs without procedures designed to limit any risk of erroneous deprivation of Plaintiffs' property.

67. The Cherokee County Board of County Commissioners, by and through the Cherokee County Sheriff's Office, had no governmental interest depriving Plaintiffs in the possession of their firearms, a right guaranteed under the Constitution of the United States. At no time was Mr. West adjudicated to be a danger to himself or others. Further, once Mr. West was arrested, there was sufficient time to attempt to obtain a search warrant based on alleged probable cause. Finally, at no time was Mrs. West a danger to herself or others.

68. No post-depravation hearing was held regarding the seizure of Plaintiffs' firearms.

69. A claim pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. §151 et seq. was presented to Cherokee County Board of County Commissioners and has been denied.

70. Citizens of the State of Oklahoma are afforded protections and guarantees under the Constitution of the State of Oklahoma.

71. Violators of these rights cannot be shielded under the guise or cloak of immunity.

72. Under Article 2, § 30 of the Oklahoma Constitution, Mr. and Mrs. West had the right to be secure in their home and to be free from unreasonable searches and seizures.

73. The actions of the Defendants in entering the home of Mr. and Mrs. West without a search warrant constituted an unlawful search.

74. The Defendants seized a multitude of firearms, as well as related items, constituting an unlawful seizure.

75. The search of the home of Mr. and Mrs. West, and the subsequent seizure of their property, was unreasonable in that the deputies and Sergeant who were present on the evening of April 7, 2017, had ample time to seek a search warrant.  No exigent circumstances necessitated entry into Mr. and Ms. West's home without a warrant, and neither Mr. nor Mrs. West consented to the deputies and/or Sergeant entering into their home and seizing property.

76. The actions of the deputies and Sergeant in violating the rights guaranteed to Mr. and Mrs. West were done during the scope and course of their employment with Cherokee County, by and through the Cherokee County Sheriff's Office, being incident to the attempt to perform the business of their employers, subjecting their employer to liability.

77. Under Article 2, § 26 of the Oklahoma Constitution, Mr. and Mrs. West have the right to keep and bear arms in defense of their home, person, and property.

78. The actions of the Defendants in seizing the firearms and related items of Mr. and Mrs. West without legal authority violated the rights guaranteed to them by Article 2, § 30 of the Oklahoma Constitution.

79. The firearms located in the home of Mr. and Mrs. West were taken by Defendants without a search warrant.

80. The Defendants took from Plaintiffs a multitude of firearms and related items, constituting a seizure.

81. At no time did either Milton Maxwell West of Lisa West consent to the seizure of the firearms and related items from their home.

82. The actions of the deputies and Sergeant in violating the rights guaranteed to Mr. and Mrs. West were done during the scope and course of their employment with Cherokee County, by and through the Cherokee County Sheriff's Office, being incident to the attempt to perform the business of their employers, subjecting their employer to liability.

83. Defendant County authorized, condoned, and ratified the acts of the Sheriff and deputies.

84. Mr. West was physically detained by Defendants intentionally, illegally, without probable cause, without a warrant, and without legal authority. Said detention was an arrest, and said arrest was illegal, false, and without the consent of Mr. West. Mr. West suffered damages as a result of said false arrest.

85. Additionally, Mr. West's intentional and illegal detention was continued by Defendants for several days, again without probable cause and without a warrant. Said illegal, false, intentional, and continuing detention of Mr. West, which Mr. West did not consent to, constitutes false imprisonment of Mr. West. Mr. West suffered damages as a result of said false imprisonment.

86. Following the unlawful arrest and imprisonment of Mr. West, Defendants knowingly and/or recklessly communicated to various media outlets various falsehoods, including but not limited to the statement that Mr. West had "PTSD" due to his prior military service, that Mr. West

had been the subject of a lawful arrest when in reality he had been unlawfully arrested and detained without being charged with a crime, and that Mr. West had fired at the deputies when such was not the case.

87. By communicating said false information, and especially doing so to a media outlet who then broadcast the false information via television, Defendants placed Mr. West in a false light which would be highly offensive to a reasonable person.

88. Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and as to the false light in which Mr. West would be placed.

89. Alternatively, in communicating false information about Mr. West to media outlets, Defendants acted outside the scope of their employment and/or authority, and did so intentionally in order to harm Mr. West and to place him in a false light.

90. As a result of said invasion of Mr. West's privacy, Mr. West has suffered mental anguish, will continue to suffer mental anguish, and has suffered consequential economic damages, including but not limited to the loss of his job.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Milton Maxwell West and Lisa West, pray for judgment against the Defendants, jointly and severally, as follows:

A. For an award of compensatory damages in an amount in excess of $75,000.

B. For an award of punitive damages in an amount in excess of $75,000.

C. For reasonable attorney's fees, the costs of this action, interest as provided by law, and for all other relief this Court deems just and proper.

Respectfully submitted,

s/ Nick Larby
Nick Larby, OBA No. 21734
LARBY & ASSOCIATES
1874 South Boulder Avenue
Tulsa, Oklahoma 74119
Telephone:   918-796-5780
Facsimile:    918-796-5781
Email:          nick@tulsalegalfirm.com
**ATTORNEYS FOR PLAINTIFFS**

**ATTORNEYS LIEN CLAIMED**
**JURY TRIAL DEMANDED**